# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MATTHEW JONES,

        Petitioner,    :    Case No. 1:13-cv-465

- vs -    District Judge S. Arthur Spiegel
    Magistrate Judge Michael R. Merz

WARDEN, Noble Correctional Institution,

    :

        Respondent.

## REPORT AND RECOMMENDATIONS

Matthew Jones brought this habeas corpus case to obtain relief from his conviction in the Warren County Common Pleas Court for felonious assault and domestic violence. He pleads the following grounds for relief:

> **Ground One:** A conviction results from ineffective assistance of trial counsel when that counsel fails to offer to stipulate to, and therefore negate presentation to the jury, an otherwise admissible but prejudicial prior conviction of the defendant.
>
> **Supporting Facts**: During Petitioner's trial upon a felonious assault and domestic violence, trial counsel failed to stipulate to a prior conviction of domestic violence, nor did he object to the use of the prior conviction. His failure to stipulate and object to the use of a prior domestic violence conviction denied Petitioner a fair trial.
>
> **Ground Two:** A conviction for felonious assault is not supported by sufficient evidence when there is insufficient evidence the defendant['s] acts caused the alleged physical harm.
>
> **Supporting Facts**: A conviction for felonious assault requires proof that a defendant caused serious physical harm. The only evidence presented to the jury was that the victim claimed Petitioner beat her up. There is no connection between the two –

1

> the alleged beating and the subsequent serious physical harm, no evidence that Petitioner "caused" the serious physical harm.
>
> **Ground Three:** A conviction for domestic violence is not supported by sufficient evidence when there is no evidence the defendant's acts caused the alleged physical harm.
>
> **Supporting Facts:** There is insufficient evidence of causation to convict Petitioner of domestic violence. The alleged victim could not describe what happened to her at anytime other than the rot [sic] "he beat me all over." That statement is contradicted by the physical evidence, her friends, police and emergency personnel.

(Petition, Doc. No. 6.)

**Procedural History**

The Warren County grand jury indicted Jones on one count of felonious assault and one count of domestic violence upon facts occurring December 21, 2010. The case was tried to a jury and Jones was convicted on both counts. The trial judge found the offenses were allied offenses of similar import under Ohio Revised Code § 2941.25, and the State elected to proceed on the felonious assault count, for which Jones was sentenced to the six-year term he is now serving.

The conviction was affirmed on appeal, except that the Twelfth District found insufficient proof of the prior conviction element needed to elevate domestic violence to a felony. *State v. Jones,* 2012-Ohio-1480, 2012 Ohio App. LEXIS 1277 (12th Dist. Apr. 2, 2012). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Jones,* 2013 Ohio 347, 2013 Ohio LEXIS 335 (Feb. 6, 2013). The instant Petition followed August 1, 2013 (Doc. No. 6). On Judge Bowman's Order (Doc. No. 5), Respondent filed an Answer/Return of Writ (Doc. No. 9) and Jones filed a Traverse (Doc. No. 11).

# Analysis

**Ground One:  Ineffective Assistance of Counsel for Failure to Offer to Stipulate to Prior Domestic Violence Conviction**

In his first ground for relief, Jones claims he received ineffective assistance of trial counsel when his attorney failed to offer to stipulate to his prior conviction for domestic violence.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

> counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Under Ohio law, a claim of ineffective assistance of trial counsel must be raised on direct appeal if it depends on evidence that is in the appellate record. Jones' first ground for relief does depend on the appellate record and was thus properly raised on direct appeal.

Ohio Revised Code § 2919.25 prohibits domestic violence. A violation is ordinarily a misdemeanor of the first degree, but if a defense has a prior domestic violence conviction, a violation is elevated to a fourth degree felony. The statute makes the prior conviction an element of the felony offense, meaning it must be proved to the jury by proof beyond a reasonable doubt. The Indictment in this case charged a felony offense by alleging a prior domestic violence conviction. *State v. Jones,* 2012-Ohio-1480, ¶ 12, 2012 Ohio App. LEXIS 1277 (12th Dist. Apr. 2, 2012). Thus proof of the prior conviction was required to obtain a conviction on the domestic relations count.

On direct appeal Jones argued that it was deficient performance to fail to offer to stipulate to the prior conviction because the prosecutor would have been obliged to accept the stipulation,

4

thus preventing introduction of other prejudicial facts about the prior conviction. Jones' appellate counsel relied on *Old Chief v. United States*, 519 U.S. 172 (1997). The Twelfth District, however, held that *Old Chief* was not controlling authority here because it involved an interpretation of the Federal Rules of Evidence and not the United States Constitution. *Jones, supra*, ¶ 15. Even if it had been authority in Ohio, it would not have controlled in this case because here the prior domestic violence conviction had direct relevance – proof of an element of the crime -- unlike the *Old Chief* prior convictions. *Id.* at ¶¶ 16-17. Because *Old Chief* was not controlling authority, the Twelfth District held it was not deficient performance for counsel to fail to offer a stipulation to the prior conviction. *Id.* at ¶ 19.

The Twelfth District was clearly correct in holding that *Old Chief* is not controlling authority in Ohio as is shown by Jones' citation (Reply, Doc. No. 11, PageID 500) to the reasoning of the dissenters in *State v. Baker*, 126 Ohio St. 3d1215 (2010). Ohio Supreme Court Justices Lundberg-Stratton, Brown, and Pfeiffer make a strong case that *Old Chief* should be accepted as the law in Ohio, but they wrote in dissent. This Court has no authority to impose those dissenting views.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Here the Twelfth District Court of Appeals applied *Strickland v. Washington, supra,* in reaching its conclusion that there was no ineffective assistance of trial counsel in failing to offer a stipulation to the prior

5

conviction. Its decision on this point is neither contrary to nor an objectively unreasonable application of *Strickland*. Jones' first ground for relief is therefore without merit.

**Grounds Two and Three:  Insufficient Evidence of Causation**

To convict a person of domestic violence, the state must prove that the defendant knowingly caused physical harm to a family or household member. Ohio Revised Code § 2919.25. Jones argues the State failed in its burden of proof on this count because it only proved he and the victim cohabited and she suffered physical harm, without proving he caused the harm. As to Ground Three, he admits the victim suffered serious physical harm, but asserts the States did not prove he caused it.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of

7

the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

In rejecting this claim on direct appeal, the Twelfth District held:

> **[\*P23]** Seiler testified that on the night in question, she and Jones had been drinking Vodka when the two of them began arguing after she saw him looking at pornography on the computer. She testified that Jones "just attacked" her by punching and kicking her, mainly in the ribs, and that she curled up in a ball and begged him to stop, and even offered not to tell anyone that he had attacked her and to explain to everyone that she simply had had a seizure. Seiler testified that she remembered being carried out of the residence on a stretcher and being taken to Bethesda Arrow Springs Hospital, and also remembered "little bits and pieces of being air flighted," though she could not say where she had been flown. Seiler could not recall what treatments had been administered to her at University Hospital, stating, "I just know that I had broken ribs and lung problems and scars from where they put tubes in me."
>
> **[\*P24]** Seiler's testimony was supported by testimony from several other witnesses, including her and Jones' neighbor, Penny Sargeant, whom they had lived with for a period of time before moving in with Jones' mother. Sargeant testified that on the night in question, Jones came to her residence and asked her to come to their home because Seiler was having an allergic reaction. When Sargeant came to Jones and Seiler's residence, she saw that Seiler was "horribly swollen" and was holding her head and crying. Sargeant stated that Jones told her that "he didn't touch [Seiler], he didn't hurt her."
>
> **[\*P25]** EMT Garrett Murphy and Warren County Sheriff's Deputy Steven Ritchie also testified that Seiler was heavily

8

swollen when they arrived at Jones and Seiler's residence. Seiler's mother, Debra Kester, testified that when she saw Seiler at University Hospital the day after the attack, Seiler's "eyes were swollen shut." Kester testified that Seiler had severe bruising, "swollen places," cuts, and scratches on her chin and forehead, and that she "was swollen so bad that she looked like if you'd touched her with a pin she would had [sic] popped." Kester testified that Seiler was in intensive care for two weeks following the attack, during which time Seiler's lungs collapsed and Seiler contracted pneumonia. Seiler's testimony was also supported by the admission into evidence of photographs taken of her that depicted the injuries she sustained as a result of Jones' attack on her, as well as photographs of the crime scene that showed blood on pillows, a comforter, and the carpet in their residence, which, according to Seiler, had not been present before the attack.

**[\*P26]** Jones points out that Seiler acknowledged several times during her testimony that her memory was not clear on the details of what happened to her on the night in question. He also notes that Seiler testified that blood was all over her face when the paramedics arrived, but that other witnesses, including EMT Murphy, testified that they did not notice any bruises or cuts on her when they first saw her. Jones also points out that Seiler's symptoms were consistent with pneumonia, which she has had 13 times in the past; that Seiler responded well to the anti-allergy medication that was administered to her by EMT Murphy after he had been informed by the 911 dispatcher that Seiler was having an allergic reaction; and that EMT Murphy acknowledged under cross-examination that he was aware that coughing caused by pneumonia can be severe enough to crack ribs. Jones acknowledges that Seiler had two broken ribs, but points to Seiler's testimony indicating that she had sustained these two broken ribs from another incident a few weeks before the incident in question.

**[\*P27]** Seiler did acknowledge on cross-examination that she had sustained two broken ribs as a result of Jones attacking her a couple of weeks prior to the incident in question. However, on redirect, she testified that she left the hospital with three broken ribs on one side and two on the other, "or something like that," and that these broken ribs were in addition to the two broken ribs she had sustained two weeks prior to the incident in question. A CT scan taken of Seiler shortly after the incident revealed that she had "displaced fractures of the dorsal right 9th through 12th ribs[,]" that "[t]here is a mildly displaced fracture [of] the dorsal left 10th rib[,]" and that "[i]n addition, there is a subacute healing fracture of the dorsal lateral left 9th rib." Another CT scan taken several

9

> days later revealed that Seiler's lungs had both collapsed. Moreover, Kester's testimony indicated that Seiler's bruises, cuts, and scratches became visible after her swelling went down.

*Jones, supra.* This evidence is more than sufficient to sustain the convictions. Jones' second and third grounds for relief should be denied.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

Jul 16 2014 5:33 PM

X *[signature]* ✓
Michael R. Merz

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).